UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AQUIRE BERNARD SIMMONS,

   Petitioner,

Case No. 2:17-cv-11735

HONORABLE STEPHEN J. MURPHY, III

v.

SHANE JACKSON,

   Respondent.
_____/

**OPINION AND ORDER DENYING THE
PETITION FOR WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND
<u>DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS</u>**

Petitioner Aquire Bernard Simmons is a Michigan prisoner and filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF 1. A Wayne County Circuit Court jury convicted Petitioner of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84(1)(a), armed robbery, Mich. Comp. Laws § 750.529, and first-degree home invasion. Mich. Comp. Laws § 750.110a(2). The court sentenced Petitioner to 5 years and 7 months' to 10 years' imprisonment for the assault conviction, 23 years and 9 months' to 80 years' imprisonment for the robbery conviction, and 11 years and 8 months' to 20 years' imprisonment for the home-invasion conviction. Petitioner is serving the sentences for the armed robbery and home invasion convictions consecutively, creating an aggregate controlling sentence of 35 years and 5 months to 100 years.

The petition raises four claims: (1) the judge's improper comments during jury selection indicated her belief in Petitioner's guilt, (2) the trial court erroneously admitted hearsay statements by a co-defendant, (3) Petitioner should have been afforded a

separate trial from his co-defendants, and (4) the trial court erroneously sentenced Petitioner as if he had been convicted of murder.

The Court will deny the petition because the claims are without merit. The Court will also deny Petitioner a certificate of appealability and deny him permission to proceed on appeal in forma pauperis.

## BACKGROUND

The Court presumes the relevant facts relied upon by the Michigan Court of Appeals are correct pursuant to 28 U.S.C. § 2254(e)(1). *See Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010). The facts relied upon, in relevant part, include the following:

> On August 8, 2012, Michael Montgomery (Montgomery) concocted a plan to rob the home of Melissa Villneff (Melissa). He enlisted the help of Reco and Aquire. These two sought out four additional men to help: Fredrick, Michael Evans (Evans), Felando Hunter (Felando), and Brandon Crawford (Brandon). That evening, Evans drove the group in his Explorer to Melissa's home. When the group first arrived, they noticed a group of young children playing outside, and decided against going forward with their plan at that time. But a short time later, armed with an SK assault rifle, revolvers, and a baseball bat, the men executed their plan.
> Evans stayed behind as the getaway driver. Montgomery, who knew that Patrick Villneff was at the house, lured him away by going for a walk with him and Patrick's dog. Fredrick, Felando, Reco, and Aquire entered the house. Apparently to their surprise, Terrance Villneff (Terrance) was inside, playing a video game. One of the men struck him in the face. Armed with the rifle, Felando ordered Terrance to a bedroom in the back of the house. There, Aquire beat him with the baseball bat at Felando's direction. The other men searched the home. Eventually, the men left. But as they did, they noticed that Melissa's father and next-door neighbor, John Villneff, was standing on his porch and calling 911. John had been alerted to the robbery by one of the children, who had seen the men enter Melissa's home. Reco fired a few shots from his revolver toward John, and Felando fired several more with the assault rifle. John was struck by one of these bullets and died shortly after.

*People v. Simmons*, Nos. 323081, 323162, 323229, 2016 WL 1039553, at *1 (Mich. Ct. App. Mar. 15, 2016).

Following his conviction and sentence, Petitioner filed a claim of appeal. Petitioner's brief on appeal filed in the Michigan Court of Appeals raised the same claims he raises in his habeas petition. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence in an unpublished opinion. *Id.* Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims, but his appeal was denied by standard order. *People v. Simmons*, 500 Mich. 958 (2017) (Table).

## STANDARD OF REVIEW

The Court may not grant habeas relief to a state prisoner unless his claims were adjudicated on the merits and the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102–03 (internal quotation and marks omitted). To obtain habeas corpus from a federal court, therefore, the state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

I.  <u>The Trial Court's Comments During Jury Selection</u>

Petitioner's first claim asserts that the trial judge demonstrated a personal belief in Petitioner's guilt during the jury selection process.

During jury selection one of the prospective jurors indicated that she was a legal assistant and that her husband was a lawyer. ECF 11-5, PgID 179–80. Based on that experience, the state court asked the following questions:

> THE COURT: If during the course of this trial I should give you an instruction of law, and as you're in the back deliberating you say, "Well, gee" -- well, you say to yourself, "the law that we said in the office is different than the law that Judge Jones gave us," whose law will you use?
>
> PROSPECTIVE JUROR RHODES: Judge Jones.

> THE COURT: Thank you very much, and I want all jurors to know this is not an ego thing. It is a legal requirement. The law that I give you is being taken down in writing.
>
> If we allow you to use the law that somebody told you out in the hallway, or at an office party, or anyplace else, a defendant couldn't get a fair trial because then the Court of Appeals could never know what law was used.

*Id.* at 180.

Under the Fourteenth Amendment's Due Process Clause, a criminal defendant has the right to a fair trial before a judge with no actual bias against the defendant or an interest in the outcome of the case. See *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). A judge has wide latitude in conducting trials, but she must maintain an attitude of impartiality to avoid giving the jury the impression that the judge believes that the defendant is guilty. *Brown v. Palmer*, 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005). Nevertheless, "a trial judge's intervention in the conduct of a criminal trial must reach a significant extent and be adverse to the defendant to a significant degree" before habeas relief is warranted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985) (quoting *Daye v. Attorney Gen. of N.Y.*, 712 F.2d 1566 ,1572 (2d Cir. 1983)).

Here, the trial court did not explicitly state any personal belief in Petitioner's guilt. Rather, Petitioner's claim relies on the danger that the judge's comments would have caused the jury to deduce that he was guilty. Petitioner's claim makes two assumptions. First, the judge's reference to review by the court of appeals would mean the Defendant was convicted—meaning that he was guilty. Second, the trial judge believed the court of appeals would review the trial. The assumptions lead to the conclusion that the trial judge believed the Defendant was guilty.

The argument has several flaws. First, the judge did not say that she believed Petitioner would be convicted. And no lay juror or legal assistant could be expected to draw that inference from the statement. Further, even if the court of appeals did review the case, the review does not show that the defendant was convicted. For example, a state appellate court could review the case on an interlocutory appeal by a prosecutor. Finally, a jury could convict a defendant notwithstanding a trial court's opinion to the contrary.

Second, the judge did not state an expectation that the trial would be reviewed by the appellate court. Thus, the comment made by the trial judge during jury selection neither indicated a personal belief in Petitioner's guilt, nor induced the jury to infer a personal belief of Petitioner's guilt.

Even assuming the comment implicated an unstated belief in Petitioner's guilt, the conduct would not merit habeas relief. For example, the Sixth Circuit held that a habeas petitioner was not entitled to relief on a judicial bias claim notwithstanding that the judge interrupted defense counsel's questioning of witnesses multiple times, interjected himself at least three times when a witness appeared to evade the question, reprimanded defense counsel in front of the jury several times, made derogatory remarks towards defense counsel, such as when the judge sarcastically inquired, "[D]on't they teach you legal courtesy in law school these days?", and made various comments that "could certainly be considered inappropriate and lacking in tact." *Gordon v. Lafler*, 710 F. App'x 654, 661–65 (6th Cir. 2017). Despite the evidence of the court's conduct, the Sixth Circuit held that the petitioner "failed to establish that the judge exhibited conduct sufficient to establish unconstitutional judicial bias" and denied him habeas relief. *Id.* at 665.

Here, even if the statement was prejudicial, the complained-of comment was far less prejudicial than the judge's remarks in *Gordon*. Accordingly, Petitioner's first claim is without merit.

II.    Admission of Hearsay

Petitioner's second claim asserts that his co-defendant's unreliable statement was improperly admitted against him in violation of the Confrontation Clause and in violation of Michigan Rule of Evidence 804(b)(3).

At trial, Tameka Simmons testified that on the night of the murder she received a phone call to pick up her nephews, Petitioner and his co-defendant Reco Simmons. ECF 11-9, PgID 1022. Reco Simmons told her that they had gotten into trouble. *Id.* at 1026–27. He said that he and Petitioner went to a house to commit a robbery and got involved in a shooting. *Id.* at 1028. He also told her that Petitioner beat the robbery victim with a bat. *Id.* at 1029. He said that as they left the scene, someone shot at Petitioner, and Reco returned fire. *Id.* Temeka Simmons testified that Petitioner did not say anything while Reco was talking except that it was not supposed to happen like it did. *Id.* at 1030.

Additional testimony was offered that the morning following the murder, someone knocked on the door of Petitioner's house and awoke his mother and father, LaShanda Harris Cunningham and Demerious Cunningham. *Id.* at 1066. Demerious answered the door and saw Felando Hunter, Michael Evans, Brandon Crawford, and an unkown man. Hunter was holding an assault rifle while Crawford and the unknown man were holding handguns. *Id.* at 1136–40. Hunter told Demerious that the group had gone to "hit a lick" at a house. *Id.* at 1143–44. Hunter further said that Reco Simmons and Petitioner were

with them. *Id.* at 1145. Hunter said he directed Petitioner to strike the victim with a bat, and Petitioner did so. *Id.*

First, to the extent that Petitioner argues that the evidence should not have been admitted under Michigan's hearsay rules, his claim is not cognizable on habeas review. Habeas corpus applies only to violations of the Constitution, or the laws or treaties of the United States. 28 U.S.C. § 2254(a). The Court's review is limited to only "whether [Petitioner's] conviction violated the Constitution, laws, or treaties of the United States" and cannot "re-examine state-court determination on state-law questions" such as hearsay. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). To the extent Petitioner argues the statements violated Michigan Rule of Evidence 804(b)(3), he fails to present a cognizable claim.

Petitioner's claim that admission of the hearsay statements violated the Confrontation Clause is also without merit. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him[.]" U.S. Const. amend VI. One of the protections afforded by the Confrontation Clause is the exclusion at trial of out-of-court "testimonial" statements. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Whorton v. Bockting*, 549 U.S. 406, 420 (2007). The Confrontation Clause does not apply to non-testimonial statements and permits their admission even if the statements lack indicia of reliability. *Giles v. California*, 554 U.S. 353, 376 (2008) (reiterating that "only *testimonial* statements are excluded by the Confrontation Clause. Statements to friends and neighbors . . . and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules."). Petitioner presents no argument that the statements at issue here were testimonial, and they were

not. Rather, the witnesses provided testimony of statements to friends and neighbors regarding the murder. Admission of the statements therefore did not implicate the Confrontation Clause. Petitioner's second claim is without merit.

III.     Separate Trials

Petitioner's third claim asserts that his trial should have been severed from that of his co-defendants, and that his counsel was ineffective for failing to request a separate trial. Petitioner asserts that if he had a separate trial, then evidence of the conduct of his co-defendants would not have been admitted against him. Petitioner also asserts that the hearsay statements discussed in the previous issue would not have been admitted at a separate trial.

The Supreme Court has not clearly established a general right to a separate criminal trial.[1] Because the Supreme Court has not recognized a specific right to separate trials, the Sixth Circuit has held that a state trial court's refusal to grant severance mandate habeas corpus relief if the joint trial (1) "resulted in the deprivation of a specific constitutional guarantee" or (2) abridged the defendant's "fundamental right to a fair trial as secured by the Fourteenth Amendment[.]" *Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979). Moreover, joint trials are favored, and the mere potential for prejudice is insufficient to mandate severance. *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

Here, the Michigan Court of Appeals denied Petitioner relief because he failed to demonstrate "that any actual prejudice occurred as the result of the trial court's decision

---

[1] *Zafiro v. United States* is not applicable to Petitioner's case because *Zafiro* addressed severance under Federal Rule of Criminal Procedure 14. 506 U.S. 534, 535 (1993).

to hold a joint trial[.]" *See Simmons*, 2016 WL 1039553, at *6. The Michigan Court of Appeals similarly rejected Petitioner's ineffective assistance of counsel claim because he failed to show prejudice. *Id.* The joint trial did not implicate any of Petitioner's specific constitutional rights. The presence of co-defendants did not prevent Petitioner from introducing evidence in his defense, and the co-defendants did not submit testimonial hearsay implicating his confrontation rights. As the Michigan Court of Appeals found, all evidence and testimony admitted during the joint trial could have been entered in a separate trial against Petitioner alone. *See id.* Petitioner fails to show that the joint trial—or counsel's decision not to motion for a joint trial—violated clearly established Supreme Court precedent or resulted in an unreasonable application of Supreme Court law in his case. Petitioner's third claim does not provide a basis for granting habeas relief.

IV. <u>Sentencing</u>

Petitioner's final claim asserts that the judge's comments during sentencing indicated that she believed that he was guilty of murder, and she improperly sentenced him as such even though the jury acquitted him of that charge.[2]

After imposing the terms of imprisonment for each of the three counts for which Petitioner was convicted, the trial court indicated that two of the terms would run consecutively:

> And I'm going to stack these. Because if one of [the] boys had said, no, I'm not going along with this the rest of them might not have, and none of this might have happened. But he's just

---

[2] Petitioner did not argue in state court and does not argue here that the trial court erroneously scored the sentencing guidelines based on facts not proven beyond a reasonable doubt or admitted by Petitioner. Rather, he argues that the court improperly considered Petitioner's responsibility for the death of the victim as a reason to sentence Petitioner at the very top of the sentence guideline range—the scoring of which itself he does not dispute. *See* ECF 11-15, PgID 2014–16.

> as responsible for that man's death as everybody else. Although the jury didn't convict him of the Second Degree Murder. As I said, how am I going to -- a Robbery Armed and a Home invasion First Degree, and [the jury didn't find] - even though the man died during it -- [the jury doesn't] find Second Degree Murder. They wanted to give him a break. And so he will serve the Home Invasion and the Robbery Armed consecutive to each other.

ECF 11-14, at 1929–30.

The claim is without merit because the trial court was permitted to consider the fact that the victim died and that Petitioner was responsible for the death in imposing sentence. A criminal defendant "is not being 'sentenced for acquitted conduct'" when the "sentencing judge takes that [acquitted] conduct into account in determining a sentence for the crime of which the [defendant] *was* convicted, as long as the sentence imposed falls within the range prescribed by law for that *convicted* conduct." *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (emphasis in original); *see also United States v. Haj-Hamed*, 549 F.3d 1020, 1026 (6th Cir. 2008) ("In general, a district court can consider uncharged or dismissed conduct for sentencing purposes."). The controlling aggregate sentence of 35 years and 5 months' to 100 years' imprisonment falls within the range prescribed by law for his convicted conduct.[3] Petitioner has therefore failed to

---

[3] Petitioner's sentences are all within the appropriate range. The state court sentenced him to 5 years and 7 months' to 10 years' imprisonment for the assault conviction. *Cf.* Mich. Comp. Laws § 750.84(1) (noting that a person convicted of the crime may be punished "by imprisonment for not more than 10 years[.]"). The state court sentenced him to 23 years and 9 months' to 80 years' imprisonment for the robbery conviction. *Cf.* Mich. Comp. Laws § 750.529 (stating that armed robbery is "punishable by imprisonment for life or for any term of years). Finally, the state court sentenced Petitioner to 11 years and 8 months' to 20 years' imprisonment for the home-invasion conviction. *Cf.* Mich. Comp. Laws § 750.110a(5) ("Home invasion in the first degree is a felony punishable by imprisonment of not more than 20 years[.]")

demonstrate entitlement to relief with respect to his final claim.[4] Because none of Petitioner's claims merit relief, the petition will be denied.

## CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability issues. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and marks omitted). Here, jurists of reason could not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims lack merit. The Court therefore denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because an appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

---

[4] To the extent Petitioner challenges the state court's decision to impose consecutive sentences—i.e. that the state court erroneously "stacked" his sentences—the claim is not cognizable. *See, e.g., Jones v. Smith*, 46 F.3d 1131 (6th Cir. 1995) (Table) (citing *Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (noting that "[t]he contention that [a petitioner's] consecutive life sentences are unauthorized under state law does not warrant habeas relief."). Moreover, sentences within statutory limits do not violate the Eighth Amendment. *See id.* (citing *United States v. Tucker*, 404 U.S. 443, 447 (1972)).

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal in forma pauperis is **DENIED**.

**SO ORDERED.**

    s/ Stephen J. Murphy, III
    STEPHEN J. MURPHY, III
    United States District Judge

Dated: October 12, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 12, 2018, by electronic and/or ordinary mail.

    s/ David Parker
    Case Manager